Our final case of the day will be Sanders v. The Invisible Michael Melvin. Mr. Beal, I trust you're not reserving any time for rebuttal. I am not, your honor. May it please the court, Michael Beal for the appellant Cordell Sanders. Mr. Sanders is a very sick man. So sick, in fact, that he bit a chunk of flesh out of his wrist and twice tried to kill himself by swallowing lethal amounts of medication just so he could get help. The district court concluded that those allegations did not establish that Mr. Sanders was in imminent danger of serious physical injury. That judgment should be reversed and the case should be remanded for further proceedings. Mr. Beal, let me tell you what worries me most about your line of argument. Suppose a prisoner who was struck out files a lawsuit and says, you know, I don't like the fact that the prison has done X to me. And if you don't let me proceed in forma pauperis, I will harm myself. Does that just effectively abolish the three strikes rule? Because he's now alleged that self-harm will follow if he can't litigate in forma pauperis. It does not abolish the three strikes rule. And the reason for that is the federal courts have recognized that the allegation of imminent danger must be plausible. This court held in Sierra Puglini versus seeing it cannot be conclusory or ridiculous. So in an example that I think you might have in mind, your honor, if someone says, I don't like the food here. And if you don't give me better food, if you don't give me two desserts after every meal, I'm going to harm myself. Federal court could look at that and say that's not a plausible allegation of imminent danger. Why isn't it? How do we know that it isn't plausible? This may be somebody who always carries through on his threats. And of course, he may not kill himself, but he may cut his finger and bleed. And that, of course, would be physical injury. Not much, but some. It would be physical injury. And if a court did conclude that that was a plausible allegation, that there were allegations, there were factual allegations demonstrating that this prisoner was likely to carry through on his threats, then the three strike exception would apply. Yeah, well, you see, that really, I don't think you're going to persuade me of that because it makes the whole thing implode. It just says anybody who promises to prick his finger can get away with filing an infinite number of frivolous lawsuits without prepaying the fees. And we don't tend to make statutes go away that easily. Right. Well, I don't think it would make the statute go away simply because, I mean, in this case, if you held him, Mr. Sanders, in favor of yours. Look, I understand your argument that this case, your client may be so mentally disturbed that he's not engaged in strategic behavior or making a volitional choice. So I can understand how you would distinguish Sanders' situation from my hypothetical. It doesn't stop me from being worried about my hypothetical. Right. Well, in your hypothetical, I would say that, again, when the court is reading a complaint and seeing whether there's a nexus between actually what's being deprived or what the prisoner is complaining about and the actual harm. So in the example I gave where if a prisoner says, I don't like the food, I'm going to harm myself, I mean, it's possible that that does not give effect to the purpose of the three strike exception. The purpose of that is to allow prisoners to seek legal redress for conditions that are likely to cause them imminent harm. And so in that example, there's really no nexus between what the prisoner would be complaining about, the thing that they want the court to give them, and the actual harm that they're alleging. Here there is such a nexus where he's saying, you know, they're not giving me mental health treatment. They're keeping me in solitary confinement for the past eight years. And so as a result of this, it's driven me to the point where I'm going to harm myself. So if there is this nexus between the physical harm and the prisoner's complaint, then that would not eliminate the rule if the rule was only applied in those circumstances. Well, I tell you, the thing I'm kind of curious about, in looking at the amicus brief, there's just nothing good about solitary confinement, basically. And they talk about all the reasons. What we don't know here, for whatever reason, is why he is in solitary confinement for eight years. What did he do or what does he do? Apparently he's in what do they call the screen, something, flexiglass or something? Flexiglass covering over the door, yeah. What's this guy? This guy must be a huge threat to somebody. Well, Your Honor, I have to say I do not know what had led to, specifically if there was a specific incident that led to his confinement in solitary. For eight years. For eight years. And still there. Ten more, I think. I believe that's what the complaint says. And I think what the complaint alleges in terms of why he's in solitary confinement is it is related to this intermittent explosive disorder that he's alleged, that he's unable to control his rage. And so because he hasn't received psychotherapy for that condition, instead of providing him with mental health treatment, what they've decided to do is just put him away and not give him the treatment that he needs to potentially get better and get out of the solitary confinement. And it seems like that is kind of the basis for this complaint, this lack of medical treatment that he so desperately needs. Well, you can see that. And, of course, then what rises to the level where he needs it. We had a case recently where there was a suicide. And then the question is, well, were they listening to him? Or did they just sort of blow it off? Or he really didn't say he was going to commit suicide? This is one of his threats, whatever you want to call it. And it seems to me that when there isn't anybody on the other side, you know, arguing, and except the mink is what talks about this, what sounds pretty logically, that's not good for somebody to have to be in solitary confinement, can't even get outside, you can't do anything except pen him up. And then you say, well, what medical treatment is going to help him? And then basically they say, you've got to do something else. And they don't say what else. For somebody, whatever this guy is confined for this period of time, and with those precautions, he must be inherently a threat to everybody, and to himself. I don't know. Is there going to be any special prison for people like this or someplace? What is the answer? Well, the best I can answer, Your Honor, is I don't know that everybody who is confined in solitary confinement is there necessarily because they present a serious threat to others. There are a lot of reasons to be in solitary confinement, whether they do this or that, or sometimes it's for protection of them. But this guy for eight years and ten more, and I don't know what the answer is. What are we going to do? Have another hearing? What's your answer? What are we supposed to do with this? What we're asking the court to do in this case is fairly narrow and straightforward. What we're asking the court to do is to reverse the judgment of the court holding that he was not in imminent danger, simply so his complaint can then go back to the district court and be screened by the district court. So that's all you're asking is can this go forward and then be screened and we don't know where it goes from there. It's just because of this technical thing where he's got three strikes and the judge thought that this wasn't enough to override that. Yes, that's all we're asking is that his complaint be allowed to proceed to screening without payment of the filing fee. Pass the buck, in other words. Yes, Your Honor. But in addition to the fact that Mr. Sanders has alleged that he's not receiving the medical treatment, as Your Honor just pointed out, he's also alleged that there is a policy in place at Pontiac where prisoners who are mentally ill can't obtain the treatment that they need until they harm themselves. And apparently that's true no matter how mentally ill a prisoner is. Mr. Sanders has been designated as seriously mentally ill by the officials at the prison. They've acknowledged that he's seriously mentally ill. They've acknowledged that presumably that he does need mental health treatment. I can only assume that's what that designation would mean. But because of this policy, he's unable to obtain that needed treatment unless he first engages in self-injury. So what they've done here is essentially they've forced his hand into Judge Easterbrook's point, determining whether this would swallow the exception. If there's a policy in place where a prisoner can't obtain a needed service, if the rule is you don't get this service unless you harm yourself, well, then that's different than somebody simply saying, if you don't give me what I want, I'm going to harm myself. If the rule is you don't get this treatment that we, frankly, seem to acknowledge that you need, we're not going to give it to you unless you harm yourself, that's the rule here, then that does establish an imminent danger of serious physical injury. Before, what did he do, bite a piece of his arm off or something? He didn't bite his arm off. What he did was twice he tried to commit suicide by swallowing lethal amounts of medication, including ibuprofen and his psychoactive drugs. Anti-psychotic medication was diagnosed to meet a diagnosis of mental illness. By the psychiatrist at the institution, if I recall correctly. Correct, yes. He's been diagnosed a number of anti-psychotic drugs. How can they treat him then? How can they treat him? Yeah. What would you have them do? What he's requested here is to be released. It's my understanding that there are different places where prisoners are held. There's a mental health unit at Pontiac, and prisoners who are housed at the mental health unit, they have better access to counseling, psychotherapy, so they can see somebody to talk through their issues rather than simply taking medication. And so there are facilities set up at Pontiac to allow prisoners to obtain this needed counseling, and what Mr. Sanders has requested is that he be released from solitary into that mental health setting. Yeah, but then he's going to have to be put in, what, some sort of restraint, apparently. That's why I say this guy obviously isn't somebody he can turn loose or put him with other people. I'm guessing, I guess that's what, if he gets past the three strikes, that's what he's going to, I don't know what they're going to say. And just to respond to that, if I may, I know I'm out of time. As long as we're asking questions, you can give answers. Okay. Very good, Your Honor. And just to that, I would say it's not clear, based on the record, why he was initially placed in solitary confinement, whether it's because there's been a determination that he presents a danger if he's released somewhere else like a mental health setting or if there's some other reason underlying it. And, you know, to the extent that that's probative of this case, that's something that the district court could examine on remand. Thank you very much. Thank you, Your Honor. The case is taken under advisement and the court will be in recess.